1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PHILLIP ALLISON,

11              Plaintiff,                    No. CIV S-05-0547 GEB GGH P

12        vs.

13   DR. KHOURY, et al.,

14              Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  This action is proceeding on the amended complaint filed June 17, 2005.

19   Plaintiff alleges that defendants Bien, Mehta, Liou and Raymond provided inadequate medical

20   care in violation of the Eighth Amendment.  Plaintiff also alleges that defendants acted

21   negligently in violation of state law.  The claims against defendants were narrowed following

22   resolution of defendants' motions to dismiss.

23              Pending before the court is defendants' summary judgment motion filed February

24   7, 2007.  After carefully considering the record, the court recommends that defendants' motion

25   be granted.

26   /////

1

II.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of

2

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

56(e) advisory committee's note on 1963 amendments).

        In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1   'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

2   On October 4, 2005, the court advised plaintiff of the requirements for opposing a

3   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

4   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

5   1988).

6   III. Legal Standard for Eighth Amendment Claim

7   In order to state a § 1983 claim for violation of the Eighth Amendment based on

8   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

9   deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

10  285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively

11  serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter,

12  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

13  1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference."

14  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

15  A serious medical need exists if the failure to treat a prisoner's condition could

16  result in further significant injury or the unnecessary and wanton infliction of pain. Indications

17  that a prisoner has a serious need for medical treatment are the following: the existence of an

18  injury that a reasonable doctor or patient would find important and worthy of comment or

19  treatment; the presence of a medical condition that significantly affects an individual's daily

20  activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900

21  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

22  (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

23  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24  In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

25  defined a very strict standard which a plaintiff must meet in order to establish "deliberate

26  indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

4

1    However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

2    which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

3    Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

4    should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

5              It is nothing less than recklessness in the criminal sense – subjective standard –

6    disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

7    1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

8    that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

9    114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

10   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

11   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

12   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

13   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

14   1981.  However, obviousness per se will not impart knowledge as a matter of law.

15             Also significant to the analysis is the well established principle that mere

16   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

17   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

18   662 F.2d 1337, 1344 (9th Cir. 1981).

19             Moreover, a physician need not fail to treat an inmate altogether in order to violate

20   that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

21   1989).  A failure to competently treat a serious medical condition, even if some treatment is

22   prescribed, may constitute deliberate indifference in a particular case.  Id.

23             Additionally, mere delay in medical treatment without more is insufficient to state

24   a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

25   F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

26   no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

1   Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

2   1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

3   to provide additional support for a claim of deliberate indifference; however, it does not end the

4   inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

5   medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

6   needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

7   the defendant."  McGuckin, 974 F.2d at 1061.

8           Superimposed on these Eighth Amendment standards is the fact that in cases

9   involving complex medical issues where plaintiff contests the type of treatment he received,

10  expert opinion will almost always be necessary to establish the necessary level of deliberate

11  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

12  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

13  treatment he received equated with deliberate indifference thereby creating a material issue of

14  fact, summary judgment should be entered for defendants.  The dispositive question on this

15  summary judgment motion is ultimately not what was the most appropriate course of treatment

16  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

17  criminally reckless.

18  IV.  Undisputed Facts

19          At all relevant times, plaintiff was incarcerated at the California Medical Facility

20  (CMF).  Defendants Raymond and Bien are medical doctors who specialize in vascular surgery.

21  Defendants Raymond and Bien treated plaintiff at the Queen of the Valley Hospital (QVH)

22  emergency room in Napa, California.  Defendants Liou and Mehta are medical doctors at CMF

23  who provide treatment to inmates in a primary care setting.

24          Plaintiff suffers from End State Renal Disease (ESR), Polycystic Kidney Disease

25  and hypertension.  In 2003 it was determined that plaintiff required regular hemodialysis

26  treatment to perform the normal blood cleansing kidney function.  On November 5, 2003, at

6

1   Queen of the Valley Hospital (QVH) defendant Raymond surgically inserted a Gore-Tex graft

2   connecting plaintiff's brachial artery and left basilic vein in his upper left arm.  A graft is a shunt

3   composed of synthetic material.  The purpose of the shunt was to provide a suitable site for

4   future insertion of the needles which would be used to connect plaintiff's circulatory system to

5   the dialysis machine.  Plaintiff returned to CMF later that day.

6           Following the surgery, plaintiff developed a thrombosis, meaning that clots had

7   formed in the graft restricting blood flow.  On December 19, 2003, plaintiff returned to QVH

8   where defendant Raymond surgically removed the blood clot in the shunt.  Plaintiff returned to

9   CMF the same day.

10          Plaintiff developed another clot in the shunt.  On February 6, 2004, plaintiff

11   returned to QVH where defendant Bien examined plaintiff.  Defendant Bien found that plaintiff

12   had chronic granuloma at the graft site.  Granuloma is a benign fleshy mass which may or may

13   not be associated with infection or a reaction to a foreign body following surgery.  Defendant

14   Bien had the granuloma cultured and found no infection.  He then surgically removed a clot on

15   the graft and also replaced a portion of the graft to bypass the granuloma.

16          On February 26, 2004, plaintiff was returned to the emergency room at QVH with

17   symptoms of swelling on his left hand and armpit area.  Defendant Bien discovered a hematoma

18   in the area of the graft.  A hematoma is a leakage and pooling of blood.  Defendant Bien drained

19   the hematoma by suction.  Plaintiff returned to CMF that day.

20          On February 27, 2004, plaintiff developed a fever of 101.5 degrees and the wound

21   continued oozing blood.  On March 1, 2004, plaintiff returned to QVH.  Defendant Bien

22   examined plaintiff and determined that he had an open wound in two places at the site of his

23   previous incision.  The graft appeared to be functioning, but there was oozing and granulation

24   present at the incision site along with some mild underlying swelling.  Defendant Bien ordered

25   cultures of the wound tissue, which confirmed an infection.  Defendant Bien then started plaintiff

26   on a course of intravenous antibiotics to treat the infection.

1      On March 2, 2004, defendant Raymond surgically removed and replaced the

2  infected graft segment, and cleaned the infected area.  Due to the infection, the surgical site could

3  not be fully closed.  On March 6, 2004, defendant Raymond performed another surgery to close

4  the surgical site.  On March 11, 2004, plaintiff returned to CMF.

5      On May 14, 2004, plaintiff returned to QVH where defendant Raymond

6  determined that plaintiff had a mild stenosis, or narrowing, at the venous end of the graft.

7  Defendant Raymond ordered a fistulagram in one month in order to see if the narrowing

8  progressed.  He also recommended possibly using angioplasty to enlarge the area of narrowing in

9  the graft if other, more conservative methods, were ineffective.

10      On July 29, 2004, defendant Mehta, a primary care doctor, examined plaintiff,

11  who complained of swelling and coldness in his left hand.  Defendant Mehta told plaintiff that

12  there was no need for further treatment at the primary care level at that time.

13  V. Analysis

14      A.  Defendant Bien

15      The amended complaint contains two specific allegations against defendant Bien:

16  on February 6, 2004, defendant Bien removed a clot from plaintiff's shunt, and on February 26,

17  2004, defendant Bien removed dark blood from plaintiff's arm.  Plaintiff does not complain that

18  defendant Bien provided inadequate medical care on any of the other occasions he examined

19  plaintiff.

20      Relying on the undisputed facts set forth above and defendant Bien's declaration,

21  defendants argue that defendant Bien did not act with deliberate indifference to plaintiff's serious

22  medical needs on February 6, 2004, or February 26, 2004, because he did not refuse to treat

23  plaintiff.  In his declaration, defendant Bien states that the swelling or coolness of plaintiff's hand

24  were not caused by the quality of the graft or fistula:

25          In my opinion, the symptoms plaintiff alleges of in his amended complaint
            following installation of the shunt–continuing intermittent swelling or coldness in
26          the left hand–were not caused by the quality of the graft or fistula, nor were they

8

1    the result of any follow-up care for the graft or fistula.  In my opinion, these
     symptoms were part of this particular patient's reactions to blood vessel
2    modifications for dialysis and were not due to any deficiencies in medical care.

3    Bien declaration.

4              In his opposition, plaintiff states that the post-operative instructions given to him

5    by defendant Bien on February 6, 2004, stated that if the swelling did not improve on a weekly

6    basis, it may mean that there was an obstruction in the venous flow and that he should return to

7    the doctor.  Plaintiff also states that the post-operative instructions stated that if the numbness or

8    pain became more severe, he should immediately contact his doctor.  Based on the information in

9    these instructions, plaintiff suggests that the swelling in his hand on February 26, 2004, indicated

10   that the shunt was improperly installed rather than caused by his reaction to blood vessel

11   modifications, as stated in defendant Bien's declaration.  Plaintiff is apparently arguing that

12   defendant Bien should have provided different treatment than he did on February 6, 2004, and

13   February 26, 2004.

14             Plaintiff has offered no expert evidence supporting his claim that the shunt was

15   improperly installed or that the treatment provided by defendant Bien on February 6, 2004, and

16   February 26, 2004, was inadequate.  The court cannot infer from the post-operative instructions

17   that defendant Bien provided constitutionally inadequate medical care.  For these reasons, the

18   court finds that the evidence provided in support of the summary judgment motion made on

19   behalf of defendant Bien is unopposed.  Defendants' evidence demonstrates that defendant Bien

20   did not act with deliberate indifference to plaintiff's serious medical needs when he treated

21   plaintiff on February 6, 2004, and February 26, 2004.

22             Defendant Bien also moves for summary judgment as to plaintiff's state law

23   negligence claim.  For the same reasons that the court recommends that defendant Bien be

24   granted summary judgment as to plaintiff's Eighth Amendment claim, defendant Bien should be

25   granted summary judgment as to plaintiff's negligence claim.

26             Accordingly, defendant Bien should be granted summary judgment.

B.  <u>Defendant Raymond</u>

Following resolution of the motion to dismiss, the following claims remain against defendant Raymond.  Plaintiff alleges that on May 25, 2005, Dr. Al-Mufti wrote an order for plaintiff to be taken to QVH so that a catheter could be put in the shunt so it could heal.  On May 27, 2005, plaintiff was taken to QVH in response to this order.  At QVH, defendant Raymond ordered an x-ray and sent plaintiff back to CMF because the hospital did not have a bed.

Defendants do not address the specific claim regarding the May 25, 2005, incident in their summary judgment motion.  Instead, defendants cite the other treatment provided by defendant Raymond to plaintiff, as discussed in his declaration, and argue that defendant Raymond did not fail to treat plaintiff and always treated him with dignity.  Certainly, there is no doubt that plaintiff exhibited on this day a serious medical need.  Moreover, an inference could be drawn in plaintiff's favor that since one doctor thought a catheter necessary, sending plaintiff away without one was deliberately indifferent.  The court stumbles, however, on the "so what" aspect of plaintiff's case.  The record is silent that sending plaintiff away caused any additional medical harm or significant, unnecessary discomfort.  It is every bit as possible that not inserting a catheter on this day was inconsequential.  Actual, as opposed to potential, injury or harm from deliberate indifference is a necessary component of plaintiff's Eighth Amendment and negligence claims.  Because the court cannot guess that harm ensued from this one instance alleged by plaintiff, the case against Raymond for this one instance cannot go before a jury.

Defendant Raymond also moves for summary judgment as to plaintiff's negligence claim.  For the same reasons the court recommends that defendant Raymond be granted summary judgment as to plaintiff's Eighth Amendment claim, defendant Raymond should be granted summary judgment as to plaintiff's negligence claim.

\\\\\

\\\\\

1    C. <u>Defendant Mehta</u>

2     The only claim against defendant Mehta in the amended complaint is based on his

3 examination of plaintiff on July 29, 2004.  Plaintiff claims that at that time, his left hand was

4 severely swollen and cold.  Defendant Mehta allegedly told plaintiff that he could find nothing

5 wrong.

6     In support of their claim that defendant Mehta did not act with deliberate

7 indifference, defendants cite defendant Mehta's declaration:

> On July 29, 2004, plaintiff complained to me that he had a shunt surgically placed, that he was experiencing swelling in his left hand and that the left hand felt cold compared to the right hand.  I was aware, both by the history plaintiff gave me and by my review of his records during his visits, that he was being regularly followed by a nephrologist at CMF for his kidney condition and future dialysis treatments.  I was also aware that plaintiff was being followed for his shunt by contract vascular specialists at Queen of the Valley Hospital.  The symptoms were persistent, but not getting any worse.  Plaintiff did not complain to me that he was experiencing numbness in the hand nor did he have throbbing pain.  He was taking Coumadin, which a specialist, who was following him, had prescribed to him for clot prevention.  On examination, his vital signs were normal, but I observed some swelling of the left hand.  In my opinion, there was no need for any treatment or intervention in the Urgent Clinic at that time, because plaintiff's clinical condition was stable and not serious, the hand symptoms were most likely related to the shunt, and he was being followed regularly by a specialist for the shunt.  I told that to plaintiff.  I also told him that if the condition got worse, he would need to be evaluated by a specialist to determine if he had stenotic lesions, which are blood vessel abnormalities that narrow blood vessels and constrict blood flow.

18 Mehta declaration, pp. 2-3.

19     In his opposition, plaintiff argues that on July 29, 2004, if the shunt were working

20 properly he should not have been continuing to experience swelling and feeling coldness.

21 Plaintiff again refers to the post-operative instructions given to him by defendant Bien on

22 February 6, 2004, which stated, in relevant part,

> 8.  Normally arm swelling resolves over a period of time, sometimes up to a few weeks. This should, however, improve on a daily or weekly basis.  If you notice that the swelling is becoming worse, please contact our office.  It may mean that there is an obstruction to the venous flow further up your arm.
> 9.  Occasionally you will experience coolness or slight numbness and even slight pain of the hand. This is due to "steal" of blood by the fistula.  If the numbness becomes worse, the coolness becomes more sever, or particularly if pain becomes

1    prominent you should immediately call our office. Also call our office if you
2    notice any significant discoloration of your fingers.

3    Amended Complaint, Exhibits, p. 60.

4    As stated above, in his declaration, defendant Bien states that in his opinion, the

5    symptoms alleged by plaintiff following installation of the shunt, i.e. continuing intermittent

6    swelling or coolness in the left hand, were not caused by the quality of the graft or fistula. Bien

7    declaration, ¶ 4g. In his opinion, these symptoms were part of plaintiff's reaction to blood vessel

8    modifications for dialysis and were not due to any deficiencies in medical care. Id.

9    According to defendant Mehta, plaintiff's hand was swollen but not to the point

10    that it required immediate medical intervention because plaintiff was being treated for this

11    symptom by vascular specialists at QVH. Plaintiff has offered no expert evidence supporting his

12    claim that his hand was so swollen that defendant Mehta should have treated his condition as an

13    emergency.

14    As to plaintiff's claim that his hand felt cold, the post-operative instructions state

15    that it would not be unusual for plaintiff to continue to feel coolness in his hand after the surgery.

16    Plaintiff has again offered no expert evidence supporting his claim that defendant Mehta should

17    have treated his condition as an emergency.

18    Because plaintiff has offered no expert evidence in support of his opposition, the

19    court finds that the summary judgment motion made as to defendant Mehta is unopposed.

20    Defendants' evidence demonstrates that defendant Mehta did not act with deliberate indifference

21    to plaintiff's serious medical needs.

22    Defendant Mehta also moves for summary judgment as to plaintiff's state law

23    negligence claim. For the same reasons that the court recommends that defendant Mehta be

24    granted summary judgment as to plaintiff's Eighth Amendment claim, defendant Mehta should

25    be granted summary judgment as to plaintiff's negligence claim.

26    \\\\\

D. Defendant Liou

The court will summarize plaintiff's claims against defendant Liou.  Plaintiff alleges that on July 20, 2004, he told defendant Liou about the problems with his hand: severe swelling, numb and painful.  Defendant Liou told him to keep his hand elevated.  Plaintiff next claims that on October 29, 2004, he again told defendant Liou that his hand was swollen and painful.  Defendant told plaintiff that he would need to start dialysis soon.  On November 5, 2004, defendant Liou told plaintiff that he would need to start dialysis immediately.  Defendant Liou then told plaintiff that he would have to wait to begin dialysis until November 15, 2004.  On December 14, 2004, plaintiff again complained to defendant Liou about his hand.  Defendant Liou told him that nothing was wrong.  On May 20, 2005, defendant Liou examined plaintiff and told him that he would have to go to QVC.

In support of their argument that defendant Liou did not provide inadequate medical care, defendants refer to defendant Lious's declaration which states, in relevant part,

> 3.  As a Physician and Surgeon at CMF, I personally examined and treated plaintiff on several occasions between approximately 7/14/04 and 8/17/05, which was the date I went out on medical leave before I ultimately stopped working for CDCR.  I have also thoroughly reviewed plaintiff's amended complaint, including all attachments.  I did not compile those attachments to the amended complaint, nor did I compare them to any original documents or certified copies of said documents, and I do not waive any evidentiary objection to said attachments.  Based on my recollections and my review of the exhibits attached to plaintiff's complaint, I have derived the following facts and opinions:
>
> a.  Based on my recollection, at all times when I treated plaintiff, I was aware that he had a shunt implanted for future hemodialysis due to End Stage Renal Disease and Polycystic Kidney Disease.  I was also aware that he was being followed by a nephrologist at CMF for his kidney condition and future dialysis treatments. I was also aware that plaintiff was being followed for his shunt by contrast vascular surgery specialists at Queen of the Valley Hospital.
>
> b.  My standard custom and practice in treating inmates at CMF was to follow the medical community standard to provide all necessary care within the scope of my medical capacity or to arrange for all necessary care by specialists for conditions which I could not treat myself.  I adhered to my standard custom and practice at all times in treating plaintiff.
>
> c.  I recall plaintiff coming to me as his assigned primary care physician on one occasion where it appeared to me that he might need dialysis treatment.  I

13

therefore arranged to schedule him to see the nephrologist as soon as possible so that the nephrologist could determine when dialysis was actually necessary and administer the treatment if it was necessary at that time.

d.  I also recall another occasion when plaintiff was sent from the dialysis unit at CMF to the Emergency Room there.  My CMF work assignment was changed to the Emergency Room on May 11, 2005 and I did not have any inmates assigned to me as their primary care physician after that. At the time I saw plaintiff in the Emergency Room, there was an indication that he needed to be seen by his vascular surgeon to have his shunt function evaluated.  I therefore arranged for plaintiff to have an outside consultation with the vascular surgeon at the Queen of the Valley Hospital as soon as possible.

4.  To the best of my knowledge, I did not treat plaintiff before July 14, 2004.  As far as I know, I did not treat plaintiff after August 17, 2005, because I was no longer seeing or treating inmates as patients at CMF after that date.

5.  At no time did I ever refuse to examine plaintiff or either to personally provide treatment to him for conditions within the scope of my professional competence, or, as necessary, to refer him to and/or communicate with, relevant specialists concerning his medical conditions requiring treatment which was outside the scope of my professional competence.  At all times I treated plaintiff with dignity and respect in an honest effort to treat his condition.  At no time did I intentionally or knowingly cause plaintiff to suffer any pain or injury.

6.  Based on my recollections as well as my review of plaintiff's amended complaint, including all attached exhibits, it is my opinion that, on the dates I treated him, I provided plaintiff with all reasonable and necessary care and treatment within my professional capacity for the problems described in the amended complaint.

Liou declaration.

Without meaning any criticism of plaintiff (who has a very difficult task in this litigation), the problem which runs throughout plaintiff's case is that he presents no evidence that the treatment, or lack thereof, constitutes deliberate indifference.  Nor can the court reasonably infer deliberate indifference from the mere fact that plaintiff had a serious medical condition.  No matter how skillful a doctor may be, the medical profession has not advanced to the point where it has the ability to cure every ill, stop every pain, mitigate every symptom, or ward off every complication.  By this time, plaintiff's complications from the graft (shunt) were well known, had been worked upon by specialists, and there was nothing evident from the evidence presented as to the procedures which should have been performed lest deliberate indifference occur.  The

1    undersigned emphasizes *that he is not weighing the evidence*.  Rather, the undersigned is looking

2    for any evidence from which a reasonable, *non-speculative* inference could be drawn that the

3    doctor's actions constituted a knowing refusal to treat medical symptoms which would result in

4    further harm or avoidable pain.  As the undersigned is not a medical professional, on this record,

5    such evidence simply cannot be found insofar as the result of this defendant's conduct resulted in

6    such harm or avoidable harm.  Nor should plaintiff be permitted to present this situation to the

7    jury and ask the jury to guess about this critical fact.

8          Defendant Liou also moves for summary judgment as to plaintiff's negligence

9    claim.  For the same reasons the court recommends that defendant Liou be granted summary

10   judgment as to plaintiff's Eighth Amendment claim, defendant Liou should be granted summary

11   judgment as to plaintiff's negligence claim.

12          E.  Injunctive Relief

13         All defendants move for summary judgment as to plaintiff's claim for injunctive

14   relief.  Because the court recommends that summary judgment be granted as to all defendants,

15   the injunctive relief claims against these defendants should be dismissed.

16         Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 7,

17   2007, summary judgment motion be granted as to all defendants.

18         These findings and recommendations are submitted to the United States District

19   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

20   days after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served and filed within ten days after service of the objections.  The parties are advised

24   \\\\\

25   \\\\\

26   \\\\\

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/9/07

/s/ Gregory G. Hollows

_____

UNITED STATES MAGISTRATE JUDGE

all547.sj

16